**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KARL N. WINGFIELD, | |
| *Plaintiff*, | |
| v. | Civil Action No. 18-2272 (APM) |
| OFFICE OF THE ARCHITECT OF THE CAPITOL, | |
| *Defendant*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Plaintiff Karl N. Wingfield brings an action against the Architect of the Capitol (the "Architect") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).  Plaintiff was employed by a company that had a contract with the Architect to maintain the Thurgood Marshall Federal Judiciary Building (the "Thurgood Marshall" building) in Washington, D.C.  Plaintiff alleges that he suffered health complications as a result of his exposure to mold toxins while working at the Thurgood Marshall building.

The Complaint should be dismissed under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).  First, the Court lacks subject matter jurisdiction because Plaintiff's claims against the United States are barred by sovereign immunity and the independent contractor exception.  Second, the Complaint fails to state a claim of negligent infliction of emotional distress or negligent supervision upon which relief may be granted.

**Factual and Procedural Background**

The Thurgood Marshall building houses agencies that support the work of the United States Federal Courts including the Administrative Office of the United States Courts, the Federal Judicial Center, and the United States Sentencing Commission.  Compl. ¶ 5.

The Architect, a legislative branch agency, is primarily responsible for leasing space in the Thurgood Marshall building to agencies that support the Judiciary Branch.  *Id.*; *see also* Master Lease Agreement, Judiciary Office Building, Washington, D.C. (Ex. 1).  In order to effectively carry out that function, Congress granted the Architect the ability to enter into all necessary contracts for improvements and the structural and mechanical care of the building. 40 U.S.C. § 6502, *et seq*.  Pursuant to this authority, the Architect contracted out responsibility for maintaining the Thurgood Marshall building to an independent contractor, CMI Management, Inc. ("CMI").  Compl. ¶ 10.

The Architect's agreement with its contractor, CMI (Contract No. AOC12C1007) (hereinafter, the "AOC/CMI Contract") provides that CMI's responsibilities include the management and supervision of all facilities management services and ensuring compliance with workers' compensation and safety laws.  AOC/CMI Contract § G.3.1 (Ex. 2 at 25).  CMI was responsible for ensuring that indoor air quality met or exceeded standards recommended by the American Society of Heating, Refrigerating, and Air-Conditioning Engineers ("ASHRAE").  *Id.* §§ C.3.2.2, C.4.6.2.a (Ex. 2 at 56, 72).  The AOC/CMI Contract required CMI to "immediately investigate indoor air quality complaints" and to conduct "independent indoor air quality tests on a semi-annual basis."  *Id.* § C.4.6.2.e (Ex. 2 at 72-73).  And more broadly, the contract required CMI to "ensure that all facilities management services be satisfactorily supervised with, at a minimum, a Property Manager, On-site Operations and Maintenance Supervisor (chief engineer), Custodial Supervisor, Tenant Project Manager, and Security Manager."  *Id.* ¶ G.3.1  (Ex. 2 at 25).  "These individuals shall have the authority to act for the Contractor daily at the [Thurgood Marshall building]."  *Id.*  CMI was also required to designate separate on-site supervisors for the operation and maintenance of the building.  *Id.*

The AOC/CMI Contract also included an indemnification clause against any and all claims for damages against the Government.  *Id.* § G.3.6 (Ex. 2 at 25-26); *see also* Contract Clause AOC52.228-4 (Ex. 2 at 39-40).  Specifically, the contract stated that "The Contractor [CMI] shall assume full responsibility and liability for compliance with all applicable regulations pertaining to the health and safety of personnel during the execution of work, and shall hold the Government harmless for any action on its part or that of its employees or subcontractors, that results in illness or death."  Ex. 2 at 25-26.

Plaintiff Karl Wingfield was employed by CMI as a project manager at the Thurgood Marshall building from November 2014 to August 2015.  Compl. ¶¶ 4, 12.  Plaintiff was neither employed nor supervised by the Architect.  *Id.*  The Architect also was not part of any discussions between Plaintiff and his employer, CMI, regarding the indoor air quality at the Thurgood Marshall building or the means to ameliorate his exposure to the alleged toxins.  *Id.* ¶¶ 15, 21, 23, 26, 31.

Plaintiff filed an administrative claim with the Architect on January 11, 2017.  Ex. 3.  The Architect denied the claim in a letter issued on April 16, 2018, because the Agency "could not establish that any negligent or wrongful act by an AOC employee was responsible for the circumstances that led to those injuries."  Ex. 4.

Plaintiff filed the present action against the United States on October 1, 2018.  Compl., Oct. 1, 2018 (ECF No. 1).  Plaintiff brings claims under the FTCA for premise liability, negligent infliction of emotional distress, and negligent supervision.  Plaintiff claims that the Architect knew that the building was contaminated with hazardous mold but failed to remediate the condition.  Plaintiff claims that he is unable to work due to a variety of injuries suffered as a

result of his mold exposure.  Plaintiff requests compensatory damages in the amount of $600,000 for pain and suffering caused by his exposure to mold at the Thurgood Marshall building.

## Legal Standards

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  It is the plaintiff's burden to establish that the Court has subject matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  When considering whether it has jurisdiction, the Court must accept "the allegations of the complaint as true."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  In this context, a Court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.* (quoting *Herbert*, 974 F.2d at 197).

### B.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests whether the pleader accomplished what it was obligated to do under the federal pleading rules.  A claim will fail this inspection if it asserts a legal theory that is not cognizable as a matter of law or if the factual tale it alleges is implausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  The pleading must demonstrate that the allegations "possess enough heft" to show a plausible entitlement to relief.  *Bell Atlantic Corp.*, 550 U.S. at 557.  Although a complaint need not contain detailed factual allegations, it

must allege enough facts to raise a plaintiff's claims beyond the level of speculation, and must

"nudge" the claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S.

662, 680 (2009); *Twombly*, 550 U.S. at 557 n.5.  "A pleading that offers 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557)

(alterations in original).

When a claim is challenged under Rule 12(b)(6), the Court presumes that all well-pleaded

allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and

views the pleading in the light most favorable to the non-moving party.  *Fitzgerald v. Barnstable*

*Sch. Comm.*, 555 U.S. 246, 249 (2009); *Twombly*, 550 U.S. 544, 555; *EEOC v. St. Francis*

*Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n.3 (D.C. Cir. 1997); *Kowal v. MCI Commc'ns*

*Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## Argument

### I.      Sovereign Immunity Bars the Claims Against the Architect

"Sovereign immunity shields the federal government and its agencies from suit and is

'jurisdictional in nature.'" *Verizon Washington, D.C., Inc. v. United States*, 254 F. Supp. 3d 208,

214 (D.D.C. 2017) ("*Verizon*") (quoting *Am. Rd. & Transp. Builders Ass'n v. EPA*, 865 F. Supp.

2d 72, 79 (D.D.C. 2012) (other citations omitted)).  "The government may waive immunity, but

such a waiver 'must be unequivocally expressed in statutory text, and will not be implied.'" *Id.*

(quoting *Lane v. Pena*, 518 U.S. 187, 192, 1 (1996)).

"If sovereign immunity has not been waived, a claim is subject to dismissal under Rule

12(b)(1) for lack of subject matter jurisdiction." *Clayton v. Dist. of Columbia*, 931 F. Supp. 2d

192, 200 (D.D.C. 2013) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  "The plaintiff bears

the burden 'of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity.'"  *Verizon*, 254 F. Supp. 3d at 214 (quoting *Am. Road & Transp. Builders Ass'n*, 865 F. Supp. 2d at 80 (other citations omitted)).  Once a court "determines that it lacks subject matter jurisdiction, it can proceed no further."  *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997).

The FTCA contains a limited waiver of sovereign immunity that allows the United States to be sued for the negligent acts or omissions of its employees acting within the scope of their employment.  28 U.S.C. § 1346(b)(1); *United States v. Orleans*, 425 U.S. 807, 813 (1976).  "Specifically, the FTCA waives sovereign immunity based on an 'injury . . . caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment . . . if a private person[ ] would be liable to the claimant.'"  *Verizon*, 254 F. Supp. 3d at 214 (quoting 28 U.S.C. § 1346(b)(1)) (emphasis added).

The FTCA's limited waiver of sovereign immunity applies only to tortious acts undertaken by "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity."  28 U.S.C. § 2671.  The FTCA defines "federal agency" as "the executive departments, the judicial and legislative branches,[1] the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."  *Id.*  Thus, the FTCA's definition of a "federal agency" explicitly excludes any federal contractor.  *Verizon*, 254 F. Supp. 3d at 215-16.

---

[1] *The Architect is considered part of the legislative branch.  See* 2 U.S.C. § 60-1 (defining the Architect as an "officer of the Congress"); *id.* §§ 1302, 1301(5) (making eleven statutes applicable to "the legislative branch," including the Architect); 5 U.S.C. § 2107(7) (stating that "Congressional employee" means, *inter alia,* "the Architect . . . and an employee of the Architect").

"The Supreme Court has interpreted this language, referred to as the 'independent contractor exception,' to mean that a contractor's negligence may only be imputed to the United States if the contractor's 'day-to-day operations are supervised by the Federal Government.'" *Macharia v. United States*, 334 F.3d 61, 68 (D.C. Cir. 2003) (quoting *Orleans*, 425 U.S. at 815); *see also Verizon*, 254 F. Supp. 3d at 216. "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Orleans*, 425 U.S. at 815 (quoting *Logue v. United States*, 412 U.S. 521 (1973)). "[T]he government may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Macharia*, 334 F.3d at 68–69 (quoting *Orleans*, 425 U.S. at 816). The United States is also permitted to "reserve the right to inspect the contractor's work and monitor its compliance with federal law without vitiating the independent contractor exception." *Hsieh v. Consol. Eng'g Servs., Inc.*, 569 F. Supp. 2d 159, 177 (D.D.C. 2008) (citing *Orleans*, 425 U.S. at 815).

In this case, Plaintiff's claims are barred by the independent contractor exception to the FTCA. Therefore, the Court must dismiss the claims for lack of subject matter jurisdiction. "At all times relevant to this complaint, the Architect contracted with a facilities management company, CMI Management, Inc. ("CMI") to manage the Thurgood Marshall Building." Compl. ¶ 10. Indeed, Plaintiff was hired to serve as a project manager at the Thurgood Marshall building and in that role Plaintiff "managed all maintenance and capital improvements for the building." Compl. ¶ 12. Thus, it is apparent from the Complaint that the Architect delegated responsibility for maintaining the Thurgood Marshall building to Plaintiff's employer, CMI, which operated as an independent contractor.

Under the terms of the AOC/CMI Contract, CMI assumed sole and full responsibility for all management and supervisory functions for all facilities management services for the Thurgood Marshall building.  The contractor's responsibilities specifically included indoor air quality control and investigating and addressing any air quality issues or complaints in the facility.  Ex. 2 at 25-26, 56, 72-73.  CMI was also solely and fully responsible for ensuring that the building was in compliance with all workers' compensation and safety laws and regulations.  *Id.*  The contract makes clear that the Architect will not supervise CMI's day to day activities.  For example, in the section describing the contractor's responsibilities, the AOC/CMI Contract states:

> The Contractor shall provide all management, administrative, clerical and *supervisory* functions required for the effective and efficient performance of this contract. . . .  All matters concerning the employment, training, conduct, [and] *supervision* . . . of employees shall be the responsibility of the Contractor.  The Contractor shall comply with all applicable laws and regulations concerning workman's compensation . . . working conditions and safety . . . , and all similar matters with respect to such employees.

Ex. 2 at 25 (emphasis added); *see also id.* at 59 ("The Contractor shall provide all management, *supervision*, labor, materials, supplies, repair parts, tools, and equipment necessary for the overall property management responsibilities of the [Thurgood Marshall building].") (emphasis added).

The factual allegations in the Complaint also rely entirely on the acts or omissions of CMI employees.  The Complaint alleges that Plaintiff complained on several occasions to CMI employees about the air quality in his workspace, but he never brought any complaints to the Architect.  Shortly after Plaintiff began working at the Thurgood Marshall building, he complained to his CMI supervisor regarding the air quality near his office area.  Compl. ¶ 15.  CMI commissioned a firm to conduct an air quality inspection of the building.  *Id.* ¶ 16.  CMI later hired a company to clean air ducts in the facility.  *Id.* ¶ 27.  Plaintiff also later spoke to a

CMI engineer, the CMI Assistant Property Manager, and other CMI employees about improving the air quality.  *Id.* ¶¶ 21-23.  Plaintiff also alerted CMI managers that he was experiencing difficulty breathing, headaches and pain due to the air conditions.  *Id.* ¶ 26.  Although he complained to CMI multiple times about the air quality, the Complaint does not allege that Plaintiff (or CMI) ever contacted the Architect about these problems.  Nor is there any factual allegation in the Complaint that the Architect had any responsibility for remedying the situation. Because the Architect did not supervise CMI day-to-day and did not exercise any control over CMI's performance regarding the air quality issues at issue in the Complaint, the independent contractor exception applies and the Court lacks subject matter jurisdiction over the claims.

The facts of this case are analogous to those in *Verizon* in which another member of this Court concluded that the independent contractor exception barred claims arising from duties that had been delegated by the government under contract to a federal contractor.  254 F. Supp. 3d 208.  In *Verizon*, a cellular provider brought an action under the FTCA against the General Services Administration ("GSA") and a federal contractor alleging negligence, nuisance, and trespass/interference with easement for damage to telecommunications equipment from steam from underground facilities owned, maintained, controlled, or repaired by the defendants.  The *Verizon* court granted GSA's motion to dismiss for lack of jurisdiction on the basis of sovereign immunity.  "Through its contract, the federal government delegated the duty to conduct inspections and routine maintenance and repairs to [the contractor and] GSA did not control [the contractor's] 'day-to-day operations' . . . or 'control [its] detailed physical performance.'"  *Id.* at 218 (quoting *Orleans*, 425 U.S. at 815; *Logue*, 412 U.S. at 528).  The same reasoning applies here.  The Architect delegated to CMI the responsibility to investigate any complaints and resolve any problems with indoor air quality at the Thurgood Marshall building.

The *Verizon* court noted that GSA's agreement with its contractor called for "close coordination between GSA and [the contractor] and gives GSA the right to conduct oversight and inspections."  But the court found that these facts were not sufficient to override the independent contractor exception to the FTCA.  *Id.* at 217.  In this case, the Architect's contract provisions relating to indoor air quality provide that the contractor shall be fully responsible for investigating and addressing any indoor air quality complaints.  AOC/Contract § C.4.6.2 (Ex. 2 at 72).  The contract further provides that "the Contractor shall conduct independent indoor air quality tests on a semi-annual basis and report their findings to the COTR [Contracting Officer's Technical Representative][2] within thirty (30) calendar days of the test."  *Id.*  The contract also requires the contractor to submit bids and proposals to the COTR for any "major repairs, such as duct work relocation or installation of new equipment."  *Id.*  As in *Verizon*, the provisions of this agreement calling for a semi-annual report and a bid for "major repairs" "clearly do not constitute supervision of day-to-day operations by the Federal Government . . . , nor does the federal government control the physical performance of the contractor."  *Id.* at 217 (quotation marks and citations omitted).

## II.    The Claims for Negligent Infliction of Emotional Distress and Negligent Supervision Should be Dismissed for Failure to State a Claim Upon Which Relief May be Granted

In addition to dismissal under Rule 12(b)(1) for lack of jurisdiction for the reasons above, the second and third counts for negligent infliction of emotional distress and negligent supervision, respectively, should also be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

---

[2] The COTR for this contract was the Supervisory Facilities Program Analyst for the Administrative Offices of the U.S. Courts.  CMI was responsible for communicating that mold was found to the COTR, not AOC.

A.      **Negligent Infliction of Emotional Distress**

To prevail on a claim of negligent infliction of emotional distress under D.C. law,[3]

Plaintiff is required to show that the Architect had a duty of care arising from a special

relationship with Plaintiff or that it had undertaken an obligation to Plaintiff of a nature that

necessarily implicated Plaintiff's emotional well-being.  *Hawkins v. Wash. Metro. Area Transit*

*Auth.*, 311 F. Supp. 3d 94, 107 (D.D.C. 2018) (citing *Hedgepeth v. Whitman Walker Clinic*, 22

A.3d 789, 810 (D.C. 2011)).  Alternatively, Plaintiff must show that he was in the zone of

physical danger created by the Architect's negligence making Plaintiff fear for his safety

resulting in emotional distress that was serious and verifiable.  *Id.* (citations omitted).  "To be in

the zone of danger, a plaintiff must be 'physically endangered by the defendant's negligent

activity.'"  *Id.* (quoting *Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 69 (D.C. 2015));

*Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 169-70 (D.D.C. 2017).

The Architect owes no duty of care toward Plaintiff because the Architect did not have a

special relationship with Plaintiff and did not undertake any obligation implicating his emotional

well-being.  Throughout Plaintiff's employment with CMI, the Architect did not engage in any

conduct or establish any relationship with Plaintiff that would establish a prima facie case of

negligent infliction of emotional distress under D.C. law.  As explained above, CMI assumed

responsibility for building maintenance, including indoor air quality, and employee safety

requirements under terms of contract.  Moreover, Plaintiff filed and subsequently settled a

workers' compensation claim with CMI and CMI's insurer.  Compl. ¶¶ 54-56.  Plaintiff's

workers' compensation claim further establishes that any negligent acts arising from a special

---

[3] "Tort liability under the FTCA is determined according to the law of the place where the alleged acts or omissions occurred—in this case, the District of Columbia."  *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911 (D.C. Cir. 2015).

relationship or conduct were imputed to his employer, not the Architect.  Therefore, the

Complaint fails to state a claim of negligent infliction of emotional distress against the Architect

on which relief may be granted.

### B.    Negligent Supervision

To prevail on a claim of negligent supervision under D.C. law, Plaintiff must show that

the Architect was negligent: (a) in giving improper or ambiguous orders or in failing to make

proper regulations; (b) in the employment of improper persons or instrumentalities in work

involving risk or harm to others; (c) in the supervision of activity; or (d) in permitting, or failing

to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents,

upon premises or with instrumentalities under his control.  *Tarpeh-Doe v. United States*, 28 F.3d

120, 123 (D.C. Cir. 1994).  "Of course, as in any negligence action, a plaintiff seeking to

establish negligent supervision 'bears the burden of presenting evidence which establishes the

applicable standard of care, demonstrates that this standard has been violated, and develops a

causal relationship between the violation and the harm complained of.'"  *Id.* (quoting *Morrison*

*v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)) (quotation marks and other citations omitted).

Here, the allegations in the Complaint do not demonstrate the requisite causal

relationship between any breach of duty by the Architect and Plaintiff's injuries.  As the

Complaint makes patently clear, CMI operated as an independent contractor.  The Architect did

not exercise day-to-day control over CMI and did not supervise the performance of CMI

employees.  Exercising any day-to-day control over CMI would have been incompatible with the

underlying contract between the Architect and CMI.  Ex. 2.  Moreover, there are no facts alleged

in the Complaint that could show that the Architect did in fact supervise or exercise day-to-day

control over CMI, notwithstanding the contractual provisions.  Therefore, the Complaint fails to

state a claim of negligent supervision against the Architect on which relief may be granted.

<u>**Conclusion**</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the case with prejudice.

March 21, 2019                               Respectfully submitted,

                                            JESSIE K. LIU
                                            D.C. Bar 472845
                                            United States Attorney

                                            DANIEL F. VAN HORN
                                            D.C. Bar 924092
                                            Chief, Civil Division

                          By:      _/s/ Daniel P. Schaefer_
                                            DANIEL P. SCHAEFER
                                            D.C. Bar 996871
                                            Assistant United States Attorney
                                            555 4th Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2531
                                            Daniel.Schaefer@usdoj.gov